And we'll move to our second case set for argument today which is Anderson versus Perez, case number 23-2790. Good morning, your honors, may it please the court, Alana Rauder for the appellants. I'd like to reserve five minutes for rebuttal. We're here on a qualified immunity issue and a Bain Act issue. I'll start with qualified immunity, although of course I'm happy to answer questions on either issue. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Generally requires existing precedent that squarely governs the specific factors. Can we just clarify on this, are you claiming prior precedent? Because as I read your brief, it seemed like you were relying more on the obviousness prong, that this was so obvious. Let's just get to the prior precedent first. What is the case that says, the clearly established law that says that this was wrong? So we're the defendants, so I would say there is no case on point. Oh, there we go, there we go, sorry. And I agree with you that the plaintiffs have not identified the case on point and that they certainly seem to be driving hard on obviousness. So if we want to skip straight to obviousness, because I don't think there's a case on point, their obviousness argument is relying on generalized principles of law, which is exactly what is not supposed to happen. Obviousness is supposed to be a rare exception. As this case recently recognized in the Wade versus County of Lyon case, the court has only found obvious violations in the exceedingly rare circumstances with extreme facts. I don't think we're anywhere near that situation here. So let's go instead to the establishment of the right in the first place. I mean, that seems to be a little bit more of a tricky subject, because there is, I mean, there is a problem with retaliation and why have they not stated a claim? Whether they may have qualified immunity for it, why have they not stated a claim for retaliation? The court found triable fact disputes on whether they've stated a claim, and so we've really only focused on the clearly established issue here, because regardless of whether they've established a claim, if they can't get past prong two of qualified immunity, the clearly established requirement, it's irrelevant, really, whether they may have a claim. And so the action here, I think, is really on that side. Although we can do either prong. Should we delve into, I mean, you're just saying we should deal with prong two and not even address prong one. Yes. But prong one would be before us, right? Or are you saying that it's not? Well, neither, the trial court found a triable fact dispute on that, because we're here on summary judgment. And so regardless, if the court gets to prong one, it still has to get to prong two, unless it's going to stay on prong one. I don't see even a triable, you know, even taking all the evidence in plaintiff's favor, I still see no triable issue of fact, and we have not advanced that theory here. We are really focused on prong two. So as to prong one, you really haven't advanced a theory why this should go out on prong one? At this point, given the summary judgment standard and the way the court approached the case, we are focused on prong two. So if there is, for purposes of this appeal, at least a triable issue of fact on whether a retaliatory motive was a but for a cause of what happened here, you know, the principle stated at that level of generality, the principle is clearly established that you can't, a retaliatory motive can't be a but for a cause of some action that would deter a person of reasonable firmness from exercising First Amendment rights. So what is it that's not sufficiently established here? Is it that the conduct in which your clients engaged would deter a person of reasonable firmness? Or what's missing? I'll say a couple of things about that. One is that they have not cited a case saying that retaliatory motive if it's a but for a cause makes it unconstitutional under the First Amendment, and I'm thinking by analogy of Neves and the cases around arrests and investigations and prosecutions where if there is probable cause and there is also retaliatory motive, you don't necessarily have a constitutional violation. So to an officer, whether it's clearly established that it being a but for a cause is enough, I would not even say it would be obvious to all but the plainly incompetent or those knowingly violating the law. I think that Neves and those other cases create actually uncertainty in this area around if it's a but for a cause, but there is also a legitimate First Amendment public interest in posting the information, whether that is going to be clearly established. So I would say that first. The second thing I would say is that this case, this court has said the general right to be free from First Amendment retaliation, and I'm quoting, cannot be framed as the general right to be free from retaliation for one's speech, rather the right must be defined at a more specific level tied to the factual and legal context of a given case. That's the Riley's American Heritage Farms case, 32F4707 at 729, and then this court also has the decision from Moore v. Garnon, very recent decision, 83F4743, holding that a retaliatory investigation, it's not clearly established that a retaliatory investigation is a violation, although there are prior cases holding that retaliatory investigations are violations, they involve different kinds of investigations, different scope, different methodology, and therefore did not clearly establish that the particular investigation at issue in Moore was unconstitutional. And I would say similarly here, the general principle that, as you said, where retaliation is a but-for cause, does not establish in every case, any more than in Moore, a prior case of a retaliatory investigation established that was clearly established enough to overcome qualified immunity. I think this is a murky area of the law, and certainly as we started with, the plaintiffs have not identified any case involving an officer acting under similar circumstances being held to violate the First Amendment, which is under White v. Pauley, the bar that we're looking for here. So we don't have that case involving similar circumstances, and Riley's American Heritage specifically tells us the general right to not be retaliated against is not enough. And so the only way to get there would be to say this is the rare obvious case, where the facts are so extreme that we're going to excuse the general requirement of a case on point and say it would be obvious to every officer. And I want to focus for a second on the facts here, because they are very attenuated. This is, there is a, officers come to an apartment based on a 911 call threatening suicide, they search the apartment, it turns out to have been a hoax. Was there anything that came up in the search? I guess I'm confused as to the underlying claim. I mean, they're just saying it was an improper search, but was there anything that came up in the search? Was anything made public? Was anything used against them? Not that it's at issue in this particular case, or as I believe a state court case where some of the underlying search issues are at issue, but here we're only talking about what happened afterwards, which is that the plaintiffs present a tort claim per California law if you want to sue public entities or officers for damages, you need to present this claim before you file the lawsuit, so they file the claim. A news, a Pasadena News picks it up and writes an article about it. In response, the chief of police puts a press release out that says there's this tort claim that's been presented. But it, yeah, and it's only the address that they take issue with, which was not in the press release, but was in recordings that were available on the website. Neither the address nor their names are in the press release. The press release says there's been a tort claim filed against us. This is right after the George Floyd, while the George Floyd protests are going on and police misconduct is really under the lens, the press release says, we want the public to be able to judge for themselves whether this was an improper response that the police did when they responded to the 911 call and came. So we want you all to be able to evaluate for yourselves. We think that the response was fine, but here, let's let you be the judge. And here are some links to the body cam footage and to the 911 call. The press release does not have the plaintiff's names. It does not have their addresses. It did not say, listen to the things and you'll find their addresses. Plaintiff's theory is that if someone clicked and went and watched the body cam footage and listened to the 911 recordings, they could find out the addresses, they could link that back to the Pasadena News article, which had their name in it, and that this was all a grand plan by the chief to chill their speech and get them to not pursue the tort claim that they had filed. Because given their job as federal investigators, it was dangerous for them to have their names out. I mean, that's the theory. And the question is, is this so glaringly, obviously unconstitutional First Amendment retaliation based on case law and cases involving these facts that we're going to deny the officer, the chief, qualified immunity? So can I ask briefly, I don't, I would just want to move on to the Bain Act arguments because I'd like to hear your response. It seems to me that those are basically waived. What's your response to the waiver argument on that? Plaintiff's theory is that they are forfeited because this particular articulation of the Bain Act problem was not raised by the audience below. There is certainly case law cited in our brief. If we find it a legal issue that we can look past it. So that's what you're asking us to do. I would say that. And also, as we also cited case law in our brief, that when a general claim has been advanced below, a particular nuance of the argument can be advanced for the first time. But I think especially where it's a legal theory, and I would also say in the interest of efficiency, this is a purely legal issue. There's no factual development to be had that could change anything. They haven't argued that there is. But the reason the Bain Act might be appealable is because under our case law currently, we allow anti-SLAPP claims to be appealed. You do, yes. But the anti-SLAPP only applies to the Bain Act claims, not to the other. I mean, the other ones are just appealable. You only appeal. Yeah. The qualified immunity arose from summary judgment.  That would have come up anyway. And that's clearly appealable. Anti-SLAPP, under your current case law, it's before you. I am aware that there is a non-Bain case pending. I am also aware that that has been on ice since March. I understand. And so at the... I don't know what will happen with that, but at the moment, it's before you. And I would say, in the interest of efficiency, because this is a purely legal issue, if it's not reached now and we go back down, I think it could be raised again on summary judgment if the court were to entertain successive summary judgment motions, which the court has discretion to do if it wants to under Martinez v. Hyde. So it would just get ahead of it. If we were to agree with you that there's qualified immunity, then the Bain Act claim would be the only issue remaining in this litigation. Is that right? I would have to go back and look. There were 10 causes of action. There were cross motions for summary judgment. The court denied some and granted some. Not everything is immediately appealable. I think it may dispose of... I guess, would there be any federal question remaining in the case if we agree with you on qualified immunity? Because where I'm going with this is, if all that is left is state law questions, the district court under 1367C would have discretion to decide not to continue to exercise supplemental jurisdiction over the state law claims, wouldn't it? There may be a Monell claim, I'm just looking down my list, that there was a tribal issue of fact found, and I'd have to think through for a minute. But you did not appeal qualified immunity on that? There's no qualified immunity on Monell claims, and I'd have to go back and look at that one. Okay. Can you address the merits of the Bain Act claim, assuming that we agree with you that we can reach the merits and address it?  I need to promise it in my time. Well, you have as much time as you need to answer our question. I'd be happy to. The Bain Act is very clear that speech alone is not sufficient, except upon a showing that the speech itself threatens violence against a specific person, and the person to whom it's directed reasonably fears that the person threatening violence had the apparent ability to carry out the threat. And this is a requirement that comes from the First Amendment context, because the government generally can't punish speech alone, except in certain categories like true threats. And this definition comes right out of the true threat language from Supreme Court case law. And so there is a guardrail, and so it has to be enforced. And here, a web, an internet press release is speech. Plaintiffs have said in passing that it's conduct, not speech, but no authority, no developed argument whatsoever. It's approximately one sentence in their brief. And if they had an argument that it was conduct and not speech, that was the time to develop it. But just an assertion that it's conduct, not speech, is not supported. And in our reply brief, we've cited numerous cases at page 25 to 26 of our reply brief treating internet speech as speech in the First Amendment context. I will be candid that it's not in the BANAC context, because I don't see BANAC cases at the federal level or the state court of appeal level going to this question exactly. But it's hard to see how an internet post is not speech. And if internet posts are protected as speech, and the First Amendment prohibits punishing speech except for true threats, or a certain other category is not at issue here, then it's got to qualify as a true threat to sustain a BANAC claim. And that includes threatening violence, which here, there's, even plaintiffs have not argued that the speech is threatening violence. The speech is the linked videos that have an address in them. And the theory is that somebody could take that address and do something with it. But there's no, it's not that the chief said, we're coming for you, here's your address, or somebody should come for you, here's the address. The chief makes a post about, we think our officer's conduct was fine, here's the video, review it for yourself. And the addresses are in the video. So you're pointing to the plain language of the statute to make your argument that this is, that it controls speech and not conduct, as your friend on the other side is arguing. Well, I mean, the statute says speech alone is not sufficient. And then we've got the case law from the First Amendment context cited at page 25 to 26 of our reply brief about what, about this being speech. And they've said nothing in response because there was no case law cited in the appellee's brief for our assertion that this is conduct and not speech. I think it would be a serious deviation from the case law to say that an internet post is conduct and not speech for purposes of the Bain Act. To take a step back, the Bain Act focuses on lots of kinds of conduct. Much of it is physical. We're talking about interfering with constitutional rights through coercion, threat, or intimidation. So we could be talking about lots of kinds of conduct here. But an internet post in a press release sure feels like speech to me under those cases, the extensive cases where it's been treated and analyzed as speech in many contexts in many cases. And so to say it's conduct with no case law to support that assertion seems to me going pretty far out on a limb. And again, in terms of your question, I am relying on the plain language of the statute that the speech must, the speech itself must threaten violence and it must reasonably appear that the person threatening violence had the apparent ability to carry out the threat. This is just not a true threat situation and therefore the Bain Act, it may be other things, but it is not a Bain Act violation. Okay. Thank you. Thank you. And we'll give you a couple minutes. Thank you. I appreciate it. Good morning, Your Honors. Stephen B. Stevens for the Plaintiffs. I'd like to get right to the core issue as counsel has described it, and that is whether the right to be free from retaliation for exercising the First Amendment right to seek redress from the government through lawsuits is clearly established such that an act of retaliation, an act of retaliation should have been obvious to the official. And so, okay, I'll ask you where I wrongly started with opposing counsel. Are you conceding that you don't have a case that says this is clearly established that this act would be an act of retaliation? I don't think we have, well, I shouldn't say I don't think. There's nothing on all fours with here. I agree with that. So you are relying on the obviousness prong when it comes to qualified immunity? The obviousness in that it's clearly established that retaliation for exercising a First Amendment right is unconstitutional. As a matter of fact, one of the things that... You're right that retaliation on its face for exercising First Amendment rights is wrong, but it seems to me that the whole point of qualified immunity is the officer has to know that what he's doing is going to be perceived as retaliation or is meant to be retaliation. Otherwise, qualified immunity seems to have no effect. So you've either got to point to a case where the officer should have known, and it sounds like you're not really pointing to a case, or you have to say, this was so obvious, no officer in their right mind would have done this. I agree with the latter characterization, Your Honor. I'd like to develop that point. The Andersons were attacked in a swatting incident where the police received a call that there was a suicidal person in their home that caused the police department to break into their home. And even after they knew that there was no suicidal person there, the officers continued to rifle through their belongings and search their home. And there's a separate claim on that? Yes. Okay. Okay. But that's only in state court. You're not asserting a Fourth Amendment claim here? No. No, we're not. We're focusing on the fact that the Andersons then ultimately instituted litigation by filing, by I should say presenting a tort claim act under California law. How did Chief Perez know that this was particularly, how should he have known this was obviously unconstitutional? Because he picked the method of retaliation that enhanced the threat in the first place. Anderson's home was attacked. And what he did was he presented a press release with embedded information about the address of the Andersons, such that anyone with a rudimentary knowledge of how to conduct a Google search would be able to put the Andersons and that address together. And to- Was there any other identifying information that would have tied the Andersons to this? So you file a tort claims, that is not publicly available, I take it, except for the fact that it was released to the public. The Pasadena Now article, when it highlights this, could somebody have gotten interested in this? Is there like a state FOIA opportunity to get at this? That I don't know. But the answer to the court's question is, in general, tort claim forms are public except for particular information that might be protected by privacy. So even if it had come out, it wouldn't have given names or the address? It would give the name- But not the address. But the address was protected for a couple of reasons, because California government code sections protect the addresses of peace officers and federal investigators. So it wouldn't take a whole lot of work for someone to look at that press release, click the link embedded in it, listen to the audio of the police, look at the video, the body cameras of the police, body camera footage, by the way, that was refused to the Andersons for a year. Now all of a sudden, it's readily available to anyone with a computer, and then work backwards to the Pasadena Now article. The defense position is that it takes- Can I stop there?  Just because I want to understand the whole context here. Your claim is really about the address, not about the names, because the names, as I understand it, the names were not in the Pasadena Now article. The names were in the Pasadena- So that's the link. That's the link. They've got the names, and now they have the address. Someone searching has the names, and now they have the address. And the address would not have been otherwise available. If somebody said, I want to figure out where the Andersons live, they could not have found that. They couldn't have gone down to the courthouse and figured out what their address was, or looked at a tax record. Well, they would have to look ... A tax record, I don't know. Frankly, that wasn't raised here. They wouldn't go to the courthouse. They would go to the city clerk's office. I'm sorry. Well, it's an important distinction, because the city clerk, the city has an obligation to protect that private information of federal investigators. Well, that's my question. So they would not have put that out. In theory, this information would not have been available. The address would not have been available anywhere else. Even if a common citizen, you could get it through a tax record or something like that, you wouldn't be able to do that in theory for the Andersons. Correct. And if someone said, I want to see the tort claim form for this incident- It would have been blocked out. It would have been blocked out, redacted in some way, if the city follows the law. So what I'm saying, Your Honor, going back to what I was developing, is that we have federal investigators whose home has been attacked, whose safety has been at least threatened, and now the chief of all the possible responses to the incident picks the one that enhances that risk. Your friend on the other side brought up an analogy to Nieves, or never known how to say that. So there, even if the retaliatory motive is but for a cause of the arrest, the court said, well, there's legitimate law enforcement purposes in being able to arrest people when you have probable cause. And so we won't, if there's probable cause, that'll defeat the retaliation claim. And I guess the analogy here would be there are legitimate law enforcement purposes in releasing information about what the police is doing and promoting transparency and public awareness and all that sort of thing. And so why couldn't a reasonable officer have looked at Nieves and thought about that principle and thought, well, I have this justification for what I'm doing in terms of transparency. And so even if it's retaliatory, it might still be permissible. What's wrong with that line of reasoning? Because I can understand that the police might want to respond to the tort claim now that it's become newsworthy. But the tort, but the news report did not pinpoint the Anderson's address. And the news report didn't have any links that would pinpoint the address. The record is, the record, and I apologize, I don't have the site in mind, but the record shows that when the city of Pasadena wanted to respond to the tort claim, it had a, I without any identifying information or any identifying links at all. So it's perfectly proper for the police chief to say, we think we didn't do anything right. Here's what happened, and omit the most dangerous information that was in the press release. And that is the link to the home address. There was no legitimate public relations point or law enforcement point to enhancing the danger to the Anderson's. As a matter of fact, if the chief of police, who presumably knows a great deal about the law of protecting police officers and investigators, had taken the time to think about it, and I'm sure he did, because as the district court said, they didn't think, the district court didn't think Chief Perez was incompetent. He thought it was retaliatory. He would have known the panoply of laws that protect this information. Government code sections that protect release of private information, such as the home address of an investigator. Government code sections that prevent posting that information. Pasadena Police Department policies that says- I mean, and just to put a finer point on it, because I get where you're going, I think, is your argument boils down to, it's obvious that an officer should not have disclosed the address in any way, shape, or form. I agree with that, your honor. That seems to be your argument, and I think that's what we've got to grapple with, is that enough. So, let's get back to the obviousness point, because obviousness is rarely used. We've said that multiple times. That's a pretty hard standard to start imposing on government officials. What's your best case when we delve into the obviousness point, or is this just a fact-specific inquiry? Well, as the court noted, it is a rare animal, and that means you're probably not going to find a case that is fact-specific. Can you give us something in the case law where a court has- I mean, obviousness, when I think of obviousness, I think of Hope v. Pelzer, where Georgia hitched a black prisoner to a hitching post, and the court was like, come on. You just cannot do that. Everybody knows you cannot do that. Are there other cases of obviousness that- I don't, I can't, well, I can't think of any case of obviousness that I would readily apply to this. However, I would say that state statutes can supply the obviousness element, if the information is protected by statute, and the chief of police is warned, do not disclose this information. This is highly sensitive. That means you take a thought, and then you take a harder thought before you do it, because if the motive is retaliatory, and the district court found that there was enough there to show a retaliatory motive, there's also enough there in the policies and in the state statutes to say, you got to put the brakes on. You got to respond to the tort claim and to the news article, fine, but don't take that extra step. I'm actually- Mr. Stephens? Yes. I have a question for you about the Bain Act, which we were talking to your friend on the other side about.  Do you have any authority to support your argument that posting a press release in body camera video is conduct and not speech? I think the press release is probably speech. I concede that point. But as the defense states, embedding the video camera, the body camera video in the audio recordings sounds like conduct to me, because if we're going to draw a distinction between what the press release says and what's embedded in the press release, it is conduct to add that and post that online. But let me- So you're arguing that simply because you can link or click the link that is in the press release, that converts that press release, which you concede is speech, into conduct? Not because someone looking at it can do that, but because of the act of embedding it, the author's act of adding- What about the act of typing a press release? Well, the act of typing the press release is probably speech. The act of embedding audio and video of the incident, I think, is conduct. But that being said, Your Honor, let me- I thought your argument was more that it was kind of basically an incitement to violence and that's what turned it into action. I'm not sure I'm following your response here. Let me short circuit this discussion. We did not develop it in our brief because we think the argument is waived. But I would concede that if the act of embedding the audio and video recordings is considered speech, then the Bain Act probably- Bain Act cause of action is probably ineffective. And do you know the answer to Judge Miller's question about whether- I seem to have a recollection that there is a Monell claim that is still alive. Do you know if there is any federal claim that's still- It's my impression that it's not, but I can- If we disagree with your position with respect to the qualified immunity issue, then would there be any remaining federal claim in this case? I have to confess, Your Honor, I have not studied that issue. But if the court would like, I'd be happy to send the court with a copy to counsel a brief letter stating our position on that. Just to put a finer point on it, if there is no- let's assume that there's no federal claim, we can't do anything. We'd still have to remand it to the district court. I agree with that, yes. Okay. I have 32 seconds left. Okay. If there are no further questions, we'll submit. Thank you. Thank you, counsel. Two minutes for rebuttal. Thank you. I will strive to make this quick. The Monell ruling is at pages 20 to 21 of the ER. The court denied cross motions for summary judgment and no qualified immunity on a Monell claim. So those are still pending? I believe so. There's a dispute about whether the addresses in the tort claims were public or not. That's briefed in our briefs, the opening brief 39 to 43, the reply brief 17 to 22. To clarify, the names and the addresses are not in the press release. The names are in the article. Right. And the block where it happened is in the article. The block says it's the 600 block of whatever street. The address is- What about this? Could they get this information anywhere else? Well, that goes to the question of whether the tort claim was public or not public. And we've argued that even if the tort claim was not public, still qualified immunity. My question is, I think, a little more nuanced than that, meaning if somebody read the article and they wanted to figure out what the actual address was, and now they have the name and the block, could they have pieced that together? If the tort claim was public, because if the tort claim was public when presented, then under the California Public Records Act, it would be obtainable. Well, but it wouldn't have the address on it. Yeah, it has the address in it. I know, but, okay. I thought that they could disclose it and it was public, but not the address. That's part of what's disputed, is there are a couple of California Public Records Act statutes about what is and isn't releasable in response to a CPRA request. My question is outside of all of that. Could you go down to the county courthouse and look at the tax records and figure it out? You don't know. It's not been briefed or argued. I will say also that whether it's obvious that this was public or not public under a statute, whether a statute would have required redaction, does not answer the question here, which is whether it was obvious that it was a First Amendment violation. That case is Davis 468 U.S. 183, which says that just violations of statutes don't convert something into defeating qualified immunity. I will make this my last point. The plaintiffs say that they don't have any obvious case that's analogous to this, which sort of circles back to is there a case on point and there isn't, and so now we're just back to obviousness. If the general principles about retaliation being improper were enough, then more should have come out the other way, then Riley's should have come out the other way, and any retaliation case essentially should come out the other way when we get to qualified immunity. But that is the kind of high-level generalization that the Supreme Court has said that we are not to engage in when we come to qualified immunity, and my time has passed up, so I'm happy to answer questions, but otherwise I will stop. I think we're good, and we again appreciate the good arguments from both counsel that are going to help us decide this case. The case is now submitted, and we're in recess for the day. Thank you, Your Honor.
judges: NELSON, MILLER, DESAI